```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| CORESTAR INTERNATIONAL PTE. LTD, | : Civil Action No. 05-5850(NLH) |
| Plaintiff/ Counter Defendant, | : |
| v. | : **OPINION** |
| LPB COMMUNICATIONS, INC., DOMINICK SPADEA and THOMAS SPADEA, | : |
| Defendants/ Counter Claimant. | : |

**APPEARANCES:**

Paul A. Mainardi, Esquire
Brown and Connery
360 Haddon Avneue
P.O. Box 539
Westmont, NJ 08108

    *Attorney for Plaintiff*

Joseph D. Dinoto, Esquire
115 Mansfield Boulevard, South
Cherry Hill, NJ 08034

    *Attorney for Defendants*

**HILLMAN**, District Judge

    On May 10, 2007, this Court granted Plaintiff's motion for summary judgment on its breach of contract claim against Defendant LPB Communications for LPB's breach of the parties' contract for the purchase of shortwave transmitters and amplifier modules. The parties were then ordered to submit supplemental briefing with regard to damages. The Court has considered the parties' submissions, and holds that Plaintiff shall be awarded

damages for LPB Communications' breach of contract as set forth below.

### I.     Transmitters

Corestar seeks incidental and consequential damages for LPB's failure to deliver the transmitters it ordered. Corestar had ordered seven 10kw shortwave transmitters from LPB, but LPB only delivered one, non-conforming transmitter. Corestar is seeking the return of its seventy-five percent deposit, less the contracted price of the one delivered transmitter. With regard to the non-conforming transmitter, Corestar is seeking to recover the amount it paid to repair the transmitter. Corestar is also seeking damages for the profits it lost from its contracts to resell the transmitter to its customers.[1]

LPB contends that the amount of damages should be reduced by the value of the transmitter parts. LPB also contends that because Corestar never notified LPB about the non-conforming transmitter, Corestar is not entitled to its costs for repairing it. LPB also argues that Corestar is not entitled to lost profits because they are speculative and can only be determined by a trier of fact. It appears that LPB is also arguing that Corestar had a security interest in the transmitter parts.

---

[1] Corestar is also seeking prejudgment interest. Because this issue applies to the damages for both the transmitters and modules, it will be addressed separately below.

### 1.  *Damages for six transmitters not delivered*

When a seller fails to make delivery, the buyer is entitled to damages for non-delivery, which is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages.  N.J.S.A. 12A:2-711, 2-713.  Incidental damages include reasonable expenses incident to the delay or breach.  Id. at 2-715(1).  Consequential damages include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise."  Id. at 2-715(2).

Damages for lost profits and additional expenses come within the category of consequential damages.  George H. Swatek, Inc. v. North Star Graphics, Inc., 587 A.2d 629, 631 (N.J. Super. App. Div. 1991) (citing Seaman v. United States Steel Corp., 400 A.2d 90 (N.J. Super. App. Div. 1979), cert. denied, 405 A.2d 826 (N.J. 1979)).  To recover lost profits, a  plaintiff need only demonstrate that the damage was of a type that a reasonable man would realize to be a probable result of his breach--a plaintiff does not need to establish that the defendant had reason to foresee the specific injury that occurred.  Id.  Additionally, lost profits "may be recoverable if they can be established with a 'reasonable degree of certainty.'"  Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 23 F. Supp. 2d 509, 515 (D.N.J. 1998)

3

(quoting Perth Amboy Iron Works, Inc. v. American Home Assurance Co., 543 A.2d 1020 (N.J. Super. Ct. App. Div. 1988)) (other citations omitted).

Because the Court has found that LPB breached the parties' contract, Corestar is entitled to the deposit it paid for the six transmitters that were never delivered.  LPB does not appear to disagree, but LPB argues, however, that these damages should be reduced by the value of the parts LPB purchased for the six transmitters.  To support this proposition, LPB cites to N.J.S.A. 12A:2-710, as well as to the Court's Opinion, which states that LPB had the parts available to make the transmitters.  LPB's arguments are without merit.  First, section 2-710 relates to a seller's incidental damages for a buyer's breach, which is opposite to the situation here, and, thus, inapplicable.  Second, the Court's finding that LPB had the parts available to make the transmitters was stated in the context of finding that LPB's inability to ship the transmitters in a timely fashion was not due to the lack of parts to build the transmitters.  The Court is perplexed why this finding supports LPB's argument that Corestar's damages should be reduced by the price of the parts.  Incidentally, the Court notes that when Corestar attempted to purchase the parts from LPB so that it could hire a third party to build the transmitters due to LPB's breach, LPB refused to sell the parts to Corestar. (Op. at 11.)

4

Further, with regard to LPB's argument that Corestar had a security interest in the transmitter parts, LPB cites to N.J.S.A. 12A:2-711, which provides that on rightful rejection or revocation of acceptance, a buyer has a security interest in goods in his possession or control. Corestar did not have possession or control of any of the parts for the six transmitters, and, therefore, could not have a security interest in the parts.

Corestar is also entitled to lost profits for its inability to provide the transmitters to its customer. Corestar had contracted with its customer to sell seven "LPB 10KW Solid State SW Transmitter[s]" to a customer in Indonesia on January 25, 2005, a few days before it contacted LPB to inquire about purchasing the transmitters from them. The contract provided that the Indonesian customer would pay Corestar $65,000.00 per transmitter for seven transmitters, which would net Corestar a profit of $18,505.00 per transmitter. As extensively noted in the Court's Opinion and documented by Corestar, LPB knew from the beginning that Corestar was purchasing these transmitters for resale. Thus, (1) because it was reasonably foreseeable that LPB's failure to provide Corestar the transmitters would prevent Corestar from fulfilling its contract with its customer, and, correspondingly, realizing its profit, (2) because LPB knew at the time of the contract that Corestar was reselling the

transmitters for profit, and (3) the lost profits are certain, Corestar is entitled to lost profits on the six undelivered transmitters.

### 2. *Damages for non-conforming transmitter*

A buyer must reject a non-conforming good within a reasonable time after delivery, and the buyer must seasonably notify the seller. N.J.S.A. 12A:2-602(1). When a buyer has accepted a good, and the buyer knows of the non-conformity, it cannot be revoked unless the acceptance was on the reasonable assumption that the non-conformity would be seasonably cured. Id. at 2-607(2). The burden is on the buyer to establish any breach with respect to the goods accepted. Id. at 2-607(4).

When a buyer has accepted goods and given notification pursuant to section 2-607, the buyer may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach. Id. at 2-714(1). Incidental and consequential damages may also be recovered under section 2-715. Id.

Corestar argues that it notified LPB of the non-conforming transmitter within two days after Corestar's customer received it and determined it was missing a back panel and the air filter was broken. Because Corestar notified LPB in a timely manner of the non-conforming transmitter, Corestar argues that it is entitled to the $4,000.00 it spent to fix the transmitter.

6

LPB argues that Corestar is not entitled to $4,000.00 for the repair of the transmitter because, as the Court found in the May 10, 2007 Opinion, there is no evidence that Corestar notified LPB about the defects.

In the Court's Opinion, it was noted,

> Along with most other UCC provisions discussed in this opinion, the parties also do not discuss the effect of N.J. Stat. Ann. 12A:2-607, which concerns a buyer's duty to notify the seller of receipt of a non-conforming good prior to cancellation of the contract. The buyer is precluded from any remedy if the buyer did not notify the seller of the breach within a reasonable time after the buyer discovered the non-conformity. N.J. Stat. Ann. 12A:2-607(3)(a). The burden is on the buyer to establish any breach with respect to the goods accepted. Id. 2-607(4).
>
> There is no evidence in the record demonstrating whether Corestar notified LPB of the non-conforming transmitter after Corestar's customer received it on October 15, 2005. Because, however, Corestar's cancellation of the contract was permitted for delays in shipping in addition to defective goods, this issue becomes one for damages.

(Op. at 33 n.11.)

Even though Corestar did not provide any evidence with regard to notification to LPB about the defective transmitter in its motion for summary judgment, Corestar has now provided evidence that it notified LPB about the defects on October 17, 2005, two days after its customer received the transmitter. (Pl.'s Br., Tan Cert. at Ex. G.)  LPB has not provided any evidence to contradict Corestar's evidence.  Thus, the evidence on the record demonstrates that Corestar seasonably notified LPB

about the non-conformity, and, consequently, is entitled to damages resulting from that non-conformity.

Corestar, however, has not submitted any proof with regard to the $4,000.00 it claims that it paid its customer for the cost of repairing the transmitter.  Instead, Corestar's sales and administrative manager, Corrina Tan, has provided a declaration stating, "To reimburse its customer for the cost of correcting defects in the one shipped transmitter, Corestar made a cash payment of $4,000.00 to its customer."  (Pl.'s Br., Tan Cert. ¶ 14.)  Corestar has not submitted any documentation to support this contention--e.g., an email between Corestar and its customer, a wire transfer receipt, a certification from its customer that it received the funds, etc.  Further, LPB has objected to these damages as speculative.

"A party bringing a claim for breach of contract has the burden of proof to establish all elements of its cause of action, including damages."  Improvement Authority v. GSP Recycling Co., Inc., 818 A.2d 431, 501 (N.J. Super. Ct. App. Div. 2003).  Because Corestar has only submitted an unsupported statement as to its payment of $4,000.00 to its customer for the cost of repairing the transmitter, and LPB has objected to it, Corestar has not met its burden of proof with regard to damages for the non-conforming transmitter.

8

**II. Modules**

Corestar also seeks incidental and consequential damages for LPB's failure to deliver the modules it ordered.  Corestar contacted LPB in March 2005 to receive a price quote for 28 amplifier modules.  On April 4, 2005, Corestar contracted with its Indonesian customer to sell 28 of the "LPB Brand 700 Watt Spare Amp Modules" for $1,999.00 each.  (Pl.'s Br., Tan Cert. at Ex. D.)  On April 12, 2005, Corestar ordered 28 modules from LPB for $1,023.00 each, and Corestar paid the entire purchase price of $28,644.00.  LPB never delivered a single module.  Corestar is seeking reimbursement for the funds it paid LPB, as well as lost profits.

For the same reasons set forth above with regard to the six undelivered transmitters, Corestar is entitled to damages for the amount it paid LPB for the modules it never delivered, as well as lost profits.

**III. Prejudgment Interest**

A federal court sitting in diversity should apply state law with respect to prejudgment interest. <u>Jarvis v. Johnson</u>, 668 F.2d 740, 746 (3d Cir. 1982).  The New Jersey Supreme Court has explained that "[u]nlike prejudgment interest in tort actions, which is expressly governed by Rule 4:42-11(b), the award of prejudgment interest on contract and equitable claims is based on equitable principles." <u>County of Essex v. First Union Nat. Bank</u>,

9

891 A.2d 600, 608 (N.J. 2006) (citations omitted). In awarding prejudgment interest,

> [t]he basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled.

Id. (citation omitted).

A court has discretion to grant or deny prejudgment interest. Id.; see also Cooney v. Ritter, 939 F.2d 81, 89 (3d Cir. 1991). Additionally, the rate at which prejudgment interest is calculated, as well as the date on which it starts to run, is within the discretion of the court. Musto v. Vidas, 754 A.2d 586, 597 (N.J. Super. Ct. App. Div. 2000). Barring unusual circumstances, an award of prejudgment interest for breach of contract cases should be made in accordance with New Jersey Court Rule 4:42-11 .[2] Benevenga v. Digregorio, 737 A.2d 696, 700

---

[2] New Jersey Court Rule 4:42-11 provides,

> For judgments not exceeding the monetary limit of the Special Civil Part at the time of entry, regardless of the court in which the action was filed: commencing January 2, 1986 and for each calendar year thereafter, the annual rate of interest shall equal the average rate of return, to the nearest whole or one-half percent, for the corresponding preceding fiscal year terminating on June 30, of the State of New Jersey Cash Management Fund (State accounts) as reported by the Division of Investment in the Department of the Treasury.

N.J. Ct. R. 4:42-11(ii).

(N.J. Super. Ct. App. Div. 1999), cert. denied, 747 A.2d 287 (N.J. 2000).

Because LPB has had the benefit of Corestar's deposit for the transmitters since February 2005, and Corestar's payment in full for the modules since April 2005, and because Corestar never was able to realize its profits for reselling the transmitters and modules, all due to LPB's breach, Corestar is entitled to prejudgment interest on its damages.  Prejudgment interest will start on November 1, 2005, the approximate date that Corestar rightfully cancelled the contract, and will end on May 10, 2007, the date of the Court's judgment in favor of Corestar.

**IV.  Conclusion**

Corestar is entitled to damages (1) in the amount it paid to LPB for the transmitters, less the amount it paid for the delivered transmitter, (2) the amount it paid to LPB for the modules, (3) lost profits on the six undelivered transmitters and all the modules, and (4) prejudgment interest calculated pursuant to N.J. Court Rule 4:42-11.  Corestar cannot be awarded damages for the repair of the non-conforming transmitter because it has not provided sufficient proof to support its claim for these damages.  An appropriate Order will be entered.

Dated:    October 10, 2007            s/ Noel L. Hillman

At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.